## JOHN DONOVAN

### *v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 23, 1905.*

1. CRIMINAL LAW—*verdict must be responsive to the issues.* To justify a judgment of conviction the verdict must respond to the issues submitted to the jury, and must contain, either in itself or by reference to the indictment, every material element of the crime.

2. SAME—*what essential to conviction of assault with a specific intent.* One charged with a crime, consisting of an assault with a specific intent, can only be convicted upon proof both of the assault and the intent specified, both being material elements of the crime.

3. SAME—*when conviction of assault with intent to rape is not authorized.* A verdict, following an instruction as to its form, finding the defendant "guilty of an intent to commit rape in manner and form as charged in the indictment," does not authorize a judgment of conviction of the crime of an *assault* with intent to commit rape.

4. INSTRUCTIONS—*when refusal of instruction cannot be complained of.* One cannot complain of the refusal of an instruction where another is given at his request upon the same subject which is even more favorable to his case than the one refused.

WRIT OF ERROR to the Circuit Court of Lee county; the Hon. R. S. FARRAND, Judge, presiding.

TRUSDELL & SMITH, and JOHN E. ERWIN, for plaintiff in error.

W. H. STEAD, Attorney General, and CHAS. H. WOOSTER, State's Attorney, for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

John Donovan, plaintiff in error, was indicted in the circuit court of Lee county for the crime of assault upon Katherine Hill with intent to commit rape. At the trial it appeared that Katherine Hill was a widow and the defendant had

driven a delivery wagon in the city of Dixon, where they lived, and they had been acquainted eight or nine years. At about nine o'clock in the evening of September 8, 1904, Mrs. Hill and her sister were walking home in Dixon, when the defendant drove up to them with a horse and buggy and asked them to ride. They refused, but he said he would take them home, and they then got into the buggy. He sat on their laps between them and drove for a block or two when he stopped and whistled to a young man named Gannon, saying that he wanted to tell him that he would be along in about five minutes. Gannon came to the buggy and put his foot on the step. There is a conflict in the evidence as to whether Gannon was going to get into the buggy, but it appeared that he was. Defendant stood up and the sister scrambled out behind him and over Mrs. Hill, and in doing so fell and was caught in the running gear. Mrs. Hill testified that she also tried to get out, but defendant held her and sat down on her lap and started the horse at a rapid gait, and in this she was corroborated by her sister. He denied that she tried to get out or that he restrained her. All the testimony as to what occurred after that came from the defendant and Mrs. Hill. He said he was going to take her home, but did not do so and turned in a different direction on a road leading to Franklin Grove. She testified that he then said he was not going to take her home, and declared in the coarsest language and with profanity an intent to do the act which, if forcible and against her will, would be rape; that he kept repeating his declaration and drove as hard as he could; that she beat him in the face, pulled his hair and knocked his hat off, and he put his head out of the buggy so she could not hit him; that he got her head under his arm so she could do nothing, but she got her head out and lost her hat in doing so; that he drove up to some bushes not far from a house, and said in language of the same kind he had been using that that was where he was going to do the act; that she started to jump out, and he started the horse again

and grabbed her dress and tore the binding; that she fell in the road and got up and went to the house, where she complained of the assault. He testified that his purpose in taking Mrs. Hill to ride was to solicit her to sexual intercourse; that he made a proposal of that kind to her, which she rejected and struck him once, only; that she did not attempt to get out and he did not restrain her; that she told him to turn around and take her home, but there were deep ditches on each side of the road at that place so that he could not turn, and that he drove on to a place that was wide enough, when she jumped out and went to the house near by. It was proved that she made complaint of an assault when she went into the house. He positively denied that he committed any assault, while she testified that he sat upon her, held her in the buggy by her limbs and at one time had her head under his arm, but that he did not make any actual attempt to do the act which he said he was going to do.

The court gave to the jury forms for their verdict adapted to different findings. The instruction designed to cover the charge of the indictment was as follows:

"If you find the defendant guilty of the crime of an intent to commit rape, as charged in the indictment, the form of your verdict may be: 'We, the jury, find the defendant guilty of the crime of an intent to commit rape, in manner and form as charged in the indictment, and we find his age to be (over) or (under) the age of twenty-one years,' (as you may find the case to be.)"

The jury returned the following verdict: "We, the jury, find the defendant guilty of the crime of an intent to commit rape, in manner and form as charged in the indictment, and we find his age to be over twenty-one years."

The giving of the instruction was one of the grounds of a motion for a new trial, and there was a motion in arrest of judgment, raising the question whether the verdict authorized a judgment. The motions were overruled and the defendant was sentenced to confinement in the penitentiary.

To authorize a judgment against a defendant the verdict in a criminal case must respond to the issues submitted to the jury. Its sufficiency is determined by ascertaining whether it is responsive to and covers the offense charged in the indictment. (12 Cyc. 690.) It must contain, either in itself or by reference to the indictment, every material element of the crime. (22 Ency. of Pl. & Pr. 873.) For example, a verdict of guilty in a prosecution for larceny which does not find the value of the property stolen will not support a judgment sentencing the defendant to confinement in the penitentiary, because it does not show, on its face, that such punishment can legally be inflicted. (*Highland* v. *People,* 1 Scam. 392; *Sawyer* v. *People,* 3 Gilm. 53.) Reference may be had to the indictment or the count under which the verdict is found, and where an indictment charges a crime, a general verdict of guilty in manner and form as charged in the indictment is a specific finding of each element of the crime as charged, and is sufficient. (*People* v. *Murphy,* 188 Ill. 144.) This is not a verdict of guilty as charged in the indictment, but is a verdict of guilty of one element of the crime as that element was charged in the indictment. The defendant was charged in the indictment with an intent to commit rape, and the verdict found him guilty of that intent as charged. But another material element of the crime with which he was charged was an assault, and there was no finding as to that element. Where a crime consists of an assault with a specific intent, one charged with the crime can only be convicted upon proof both of an assault and the intent specified, both being material elements of the crime. (*Turley* v. *People,* 188 Ill. 628.) The reference to the indictment did not aid the verdict; since the reference was limited to the intent charged, and did not, by any reasonable intendment, include an assault. The instruction was erroneous and the verdict was insufficient to authorize a judgment.

Counsel for plaintiff in error say the instructions given at the request of the People were all erroneous, but they point

out none except the third, which they object to as giving undue prominence to the fact that defendant induced Mrs. Hill to enter his buggy under a promise to take her home, and as assuming by the words "his object" that he had a criminal purpose. An instruction properly refers to the facts and circumstances of the particular case and need not be a mere general, abstract rule of law applicable to all cases. The fact that defendant induced Mrs. Hill to enter the buggy by a promise to take her home after she had refused, was proved and not disputed, and it was not error to include it in the hypothesis of fact. The words "his object" referred to a previous part of the instruction, where the jury were required to find, from the evidence, beyond a reasonable doubt, an intent of the defendant to have carnal intercourse with Mrs. Hill by force and against her will. The words did not assume the existence of any fact.

It is also said that all instructions asked by defendant and refused were correct and should have been given, but out of the ten refused counsel specify none but the eighth. The supposed legal principle stated in it was, that if any single fact inconsistent with the guilt of the defendant had been proved it would be sufficient to raise a reasonable doubt, and the jury should acquit him. Whether the principle stated was correct or not, plaintiff in error has no ground for complaint because it was not given, for the reason that the court gave the third instruction asked by his counsel, which went even further, and advised the jury that if a reasonable doubt of any fact necessary to convict him had been raised in the minds of the jury by the evidence or the ingenuity of his counsel, upon any hypothesis reasonably consistent with the evidence, that doubt was decisive in favor of his acquittal. He was given the benefit, not only of any reasonable doubt arising out of the evidence, but also of the ingenuity or inventive ability of learned counsel in framing hypotheses of possible conditions of fact, reasonably consistent with the evidence, raising a reasonable doubt as to any one fact neces-

sary to convict. The court gave twenty instructions at the instance of his counsel, which, as a series, were very favorable to him.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*