JOHN H. WALSTON, plaintiff in error, *vs*. THE STATE OF GEORGIA, defendant in error.

1. The defendant was indicted for the offense of murder. The evidence introduced upon the trial was purely circumstantial. The following verdict was returned: "We, the jury, find the defendant guilty, and that he be imprisoned in the penitentiary at the mercy of the court:"

*Held*, that the verdict was not too uncertain to be executed by the judgment of the court; that its legal effect was to restrict the court from inflicting any other penalty than imprisonment in the penitentiary for life, as prescribed by the statute.

2. The verdict is supported by the evidence.

Criminal law. Murder. Verdict. New trial. Before Judge BUCHANAN. Heard Superior Court. September Term, 1874.

For the facts of this case, see the decision.

B. H. BIGHAM; J. B. S. DAVIS; F. S. LOFTIN; W. W. MERRILL, for plaintiff in error.

THOMAS W. LATHAM, solicitor general, by C. W. MABRY, for the state.

WARNER, Chief Justice.

The defendant was indicted for the offense of murder, and on the trial thereof, the jury returned the following verdict: "We, the jury, find the defendant guilty, and that he be im-

Walston *vs*. The State. of Georgia.

prisoned in the penitentiary at the mercy of the court." The defendant made a motion in arrest of judgment, on the ground that the verdict was uncertain and illegal, and also made a motion for a new trial on the several grounds therein set forth, which motions in arrest of judgment and for new trial were both overruled, and the defendant excepted.

1. By the 4323d section of the Code, it is declared that "the punishment of murder shall be death, but may be confinement in the penitentiary for life in the following cases: By sentence of the presiding judge, if the conviction is founded *solely* on circumstantial testimony, or if the jury trying the traverse shall so recommend. In the former case, it is discretionary with the judge; in the latter, it is not." Is the verdict of the jury in this case, in view of the foregoing provision of the Code, void for uncertainty, and therefore illegal? Verdicts are to have a reasonable intendment, and are to receive a reasonable construction, and are not to be avoided, unless from necessity : Code, sec. 3561. That it was the intention of the jury to find the defendant guilty of the offense with which he was charged in the indictment there can be no doubt, for they have said so in express words in their verdict. There can be no reasonable doubt, from the verdict, that the jury intended that the defendant should be punished for the offense of which they found him guilty, by imprisonment in the penitentiary; but, instead of saying he should be imprisoned in the penitentiary for life, they say that he should be imprisoned in the penitentiary at the mercy of the court. So much of the verdict as related to *the mercy of the court*, was surplusage, because the law fixed the time for which he should be imprisoned in the penitentiary when the jury recommend that mode of punishment. The legal effect of the verdict of the jury, therefore, was to restrict the court from inflicting any other penalty than imprisonment in the penitentiary for life, as prescribed by the statute. The jury are not authorized by the statute to fix the penalty, but only to recommend the mode of punishment, and having recommended that the defendant be imprisoned in the penitentiary, at the mercy of

the court, and the court having no discretion, under the law, to exercise any mercy, the legal effect of the verdict was to authorize and require the court to imprison the defendant in the penitentiary for the time *fixed by law.* Such, in our judgment, is the reasonable intendment of the verdict, and such is its reasonable construction, in view of the provisions of the 4323d section of the Code.

2. One of the grounds in the motion for a new trial is, that the verdict is contrary to the evidence, and strongly and decidedly against the weight of the evidence. The evidence against the defendant was *solely* circumstantial evidence. It appears from the evidence in the record before us that on the 13th of June, 1874, the report of a gun was heard by one of the witnesses just before sun-down; saw deceased's horse coming by him with only saddle and bridle on; went in the direction from which the horse came, about five hundred and fifty yards, and found the body of deceased on the side of a settlement road; had the appearance of having been recently shot with a load of buckshot. The evidence shows that the defendant was in the vicinity of the place where the body of the deceased was found, about that time of the evening, as he said, hunting a pig. The evidence also shows that the defendant and deceased had a difficulty at a mill about the middle of the same day; that angry words passed between them. About three o'clock of the same day, defendant borrowed a doubled-barreled shot gun from one of his neighbors, said he wanted no ammunition but a little powder, the gun and shot bag were handed to him, took both with him, and returned the same about dusk that evening. It was also in evidence that defendant had some buckshot in his possession. There are several other circumstances detailed by the evidence, such as the mark of the breech of the gun resting on the ground at the briar patch, where it appeared the person who fired the gun had been standing, the size of which corresponded with that which the defendant had borrowed; but the circumstance which most *emphatically* points to the defendant as the perpetrator of the crime, is the pieces of paper which were found

between the body of the deceased and the place where the assassin stood at the briar patch, having the appearance of having been used as gun wadding, on one of which was part of an obituary notice, the other part of which was found in the shot bag which the defendant had with him, and which was part of the LaGrange Reporter newspaper. In view of all the evidence, as disclosed in the record, we cannot say that the verdict of the jury was wrong, the more especially as there was no attempt by the defendant to account for himself at the time the crime was perpetrated. Murder by assassination can rarely be proved except by circumstantial evidence, and as the jury were satisfied as to the guilt of the defendant from the evidence before them, and the presiding judge, before whom the case was tried, having refused to grant a new trial, we will not interfere to control the exercise of his sound discretion in that respect. There were several exceptions taken to the rulings of the court during the progress of the trial, none of which, in our judgment, were well taken, and we merely refer to them for the purpose of showing that the same have not escaped our notice and consideration.

Let the judgment of the court below be affirmed.